Welcome to the Fourth Circuit. Judge Thacker and I are pleased to welcome Judge Henry Hudson from the U.S. District Court for the Eastern District of Virginia and thank him for sitting in with us today. Our first case is 15-14-86, S.E.H. v. Bd of Ed of Anne Arundel Cnty and I'm probably going to get this name wrong, Ms. Alamanz-Altabelli, is that right? Close to it? All right. Come on up and tell us what you got. Good afternoon and may it please the Court. I represent S.E.H. and his parents, S.H. and J.H. As set forth in appellant's brief filed in this case, S.E.H. is a student with a disability entitled to protections under the Individuals with Disabilities Education Act, Section 504 the Rehabilitation Act, and the Americans with Disabilities Act. Because of S.E.H.'s life-threatening allergies, his parents have requested that his aid be and Heimlich Maneuver or abdominal thrust. They have made this request for when S.E.H. was in first grade in the school year of 2013. And how is it that the current IEP does not provide the student with an appropriate education? Well, Your Honor, at the administrative hearing in front of ALJ O'Connor, the ALJ failed to analyze the IEP and the required statutory provisions of the IDEA under 1414 D1A, which requires training for school personnel. He relied upon a decision that predated the 1997 changes in the IDEA when analyzing whether or not the related services were appropriate for S.E.H. The gravamon of the ALJ decision is based upon his belief that the issues before him were one of policy and not of fact. Well, if you have two employees, one that is four seconds away and one 14, doesn't that fulfill the requirements? Fourteen seconds to respond? Well, Your Honor, our expert witness, Ms. D. Pietro, testified that the required time is within 10 seconds. Our concern was that the time that would be spent gathering somebody to come and respond may be longer than the 18 seconds. That was the evidence that's in the record, isn't it? Yes, it is. It is the evidence that is in the record. However, the judge failed to look at the 20 U.S.C. 1414 D1A. The district court in looking at the But why isn't, as I understand it, there's the school nurse, the LPN, the PE teacher, the speech pathologist, and three cafeteria workers, so seven people trained in the appropriate CPR. Why isn't that enough to meet the requirements? Well, our expert testified that the cafeteria workers may not be appropriate as they would have materials on their gloves or on their clothing, and that may trigger an anaphylaxis reaction of SEH. The cafeteria workers are only trained in the abdominal thrust. How many anaphylaxis reactions had the student had at that point at this school? None. None. However, the allergens that were present and are listed in the ALJ's decision are ever present throughout his school day. Our concern is that when this went to the district court, the district court did not conduct a sufficient review of the findings and a determination of the ALJ decision. At the same time that we filed the IDEA request on September 10, 2013, we also filed a request for a Section 504 hearing as well at the same time. We were looking for reasonable accommodations under Section 504. It is our belief that the dismissal of this case on summary judgment was inappropriate by the district court judge. We never got our 504 hearing. The 504 standards… I thought they scheduled a hearing and you just decided you weren't going to participate. Well, Judge, we filed our request on September 10, 2013. Even if you generously look at the timeline that appellees have put forth, they knew on October 23, 2013, that the judge had dismissed our Section 504 claims in our IDEA. They never acted… Well, did they? To answer this, were you offered a hearing and you did not participate? We had already filed in federal court by that time. Were you offered a hearing and you did not participate? We were offered a hearing, yes. And you did not participate? Because it had been 176 days. No, I didn't ask you that. I just asked you whether or not you participated. No, we did not. Because it had been 176 days since our filing in September 13, 2013. We had already filed in federal court on our claims under Section 504, which we believe require a higher standard than the FAPE under IDEA. Under Section 504, SEH is entitled to as an adequate education as his peers. And it is our contention that as adequate is for him to be safe in school. And how has the lack of people trained in a homilic maneuver and in CPR affected the quality of his education? How has it directly affected the education that he has received? Well, fortunately, he has not suffered any reactions while he has been at school. That is in the record and he has been fortunate, the family has been fortunate, that he has not suffered any reactions. They have been really placed with the Hobson's choice here. Either send him to school and run the risk that something will happen to him or keep him at home. It doesn't seem fair that he would have to give up one right in order to enforce another right. Why do you say he's given up the right? I mean, you've had questions from the judges that pointed out in the record that the school system seems to have provided a number of folks at the school who are almost instantaneously available in case there are any problems. The concern has always been that at the instant that he would require CPR or a homilic, that the person that is with him all day, every day, should be the person that is trained in order to. Well, what does that have to do with all the other folks that are readily available right there at the school? Well, Judge, it would be the immediacy of it and that is what he requires. That is what he needs. The family believes that the lack of the trained assistant with him who is with him throughout the day is a denial of FAPE under the IDEA and furthermore, under Section 504, we believe that it is not as an adequate education as his peers are receiving. We never received our- What do they get that he doesn't get? Well, they have a safe environment in school. The school environment is not safe for SEH. The district court ruled in summary judgment in favor of the defendants. Without addressing the retaliation claims that we had, the district court decision found at JA4548 sites in the precursor IDEA, Section 504 and then Ms. Cites, I believe it is the ADA, but it is listed as ADEA. The court glossed over or didn't address the concerns of the retaliation when we were looking for a 504 hearing and we were unable to get it back in September and October of 2013 based upon a statement that the Office of Administrative Hearings was no longer adjudicating those hearings. We did not have that information at the time. While the procedures may have been promulgated in June of 2013, the Office of Administrative they were no longer the arbiter of 504 claims. The October 15th letter from the board president came after our filing in September 13th, 2013, came after our pre-hearing conference in the IDEA hearing. That is an issue of material fact that the court did not address in a trial under 504. The district court erroneously tied and limited SEH's Section 504 and ADA rights to a violation of the IDEA and in so ruling the district court disregarded his causes of actions created under three separate and distinct laws such as his claims for discrimination, retaliation, failure to provide reasonable accommodations, and failure to provide accessibility to any services or benefits. Aren't the remedies that you asked for or suggested under the ADA the same ones that would have suggested for the FAPE? We never got a hearing on whether or not that education was as adequate. I'm asking you when you represented them in your briefs, aren't they basically identical? I'm sorry judge, can you repeat the question? Well the relief that you requested for your ADA claim, isn't that identical to what you We were requesting that the aid be trained as a reasonable accommodation under Section 504. Wasn't that what you asked under both causes of action? Yes, it is what we were asking under both causes of action. So how is the ADA any different from the other one? Well the Section 504 has a different standard which is as adequate and the ADA has effective and we do not believe that we received, we didn't get a hearing either at the Section 504 stage or at the District Court stage on those claims under 504 and the ADA. They're distinct claims, all three are distinct claims and the District Court did not analyze all three distinct claims in its two and a half page decision. So under these circumstances, we believe the District Court's conflation of these statutes is legal error warranting reversal of the summary judgment order. We believe that by grouping the IDEA, ADA and Section 504 claims together and summarily dismissing the student was a clear error. Thank you. Okay, you have some rebuttal time. Four minutes. Thank you judge. Ms. Nelson, are you the amicus? Come on up. May it please the court, First COPA appreciates this opportunity to participate in oral arguments. Before going into my argument, I'd like to return to your question Judge Agee about whether the remedies are the same or different. The remedies sought were the same but there are three distinct claims here. One under the IDEA which focuses on the appropriateness of the education. One under, and I'll just address 504, which talks about discrimination and services available to other children. So it's not so much focused on, it's not focused on the appropriateness, but on the availability which comes up to the discrimination claim. The availability comes up under one of the regulations, I think it's 104.33. Are there other students within the Anne Arundel County School System that have a one-on-one aid who are trained in the Heimlich procedures and CPR? Is that something they'd normally furnish? I don't know your honor, I'm only amicus here, you'll have to re-address that to the parties. Can I clarify what you just said about the remedies? So there are three distinct claims. The remedy requested is the same for all three, but the standard for each of the three that needs to be reviewed is different? Yes, your honor. So therefore, and this was raised by the, I think the appellees in their brief too about the claims. The case they refer to is a district court case, which if memory serves is from the 90s, but the claims are distinct. Plus the remedies, especially once you get to federal court, are distinct in the sense that what the plaintiffs were asking for is prospective injunctive relief to train the aid, which looks a lot, smells a lot like the IDEA, but is different because the standard under which it judged would be different. It would also be entitled to reimbursement of expert witness fees, which is not available under the IDEA, but is available under 504. So as the court I'm sure is aware that in Smith v. Robinson way back in 1984, the IDEA was found to be the exclusive remedy for appropriate educational claims. Congress responded with the Handicapped Children's Protection Act of 1986, which reaffirmed the need for handicapped children. As I just said, this is focused on the adequacy of the needs of the handicapped children, which comes out of 34 CFR 104. The difference between these two statutes was recognized way back in 1993 by Oberti, which is a district court case, I believe, out of New Jersey, but has been kind of the bellwether of the standard since then. More recently, the Ninth Circuit discussed this in Mark H. v. Limino back in 2008, which was required to a comparison of the two, and it found that the district court erred when it held that 504 attempts to correct what is in essence a mere violation. So it recognized that violations of FAPE, the denial of FAPE does not necessarily mean that there has been an adequate addressing of the 504 claim, and that the IDEA is not the exclusive remedy. Similarly in 2012, KM v. Tustin held that there were, again, different substantive standards. As to the procedural violations that the court asked the appellant, as I understand the record, these were, that 504 hearing was finally offered, but it was after the fact. It was after the filing of the complaint. So it may remedy something going forward, but it doesn't remedy the fact that the 504 hearing was denied to the plaintiffs prior to the filing of the Federal complaint. I'd also like to address one brief point. In the appellant's brief, footnote 7, beginning at page 47, they confused the exhaustion requirement because they argued that the time for asking for the IDEA, for the 504 hearing didn't occur until after the IDEA hearing was concluded. So they're applying some sort of exhaustion in the administrative process, where the cases are very clear when we talk about administrative remedies. We're talking about administrative remedies that have to be exhausted prior to filing a complaint in Federal court. Thank you, Your Honor. Thank you very much. Ms. Cavati? May it please the Court, my name is Manisha Cavati. I'm here on behalf of the Appellee's Board of Education of Anne Arundel County and Appellees Perkins, Talar, DeWitt, and Schermack. As the District Court succinctly said in its decision, the essential issue presented by this case is whether the student has a right to be accompanied by an adult all day long that is trained in Heimlich Maneuver and CPR. The District Court under the Doyle Standard properly affirmed the ALJ's decision. The burden of proof at the administrative level was on the parents under the Schaefer v. Wiest case. The ALJ had reviewed 57 documents, four days worth of testimony, and eight witnesses who testified, many of whom were expert witnesses on behalf of the school system. The ALJ, as you have noted, reviewed and the District Court affirmed that the educational program that was in place for the student at the school had ample preventive measures in place to address the student's allergy needs and health needs. And if there was an emergency situation, that the school system had put in place enough response mechanisms and people to respond. As you have noted, the nurse was four seconds away from the cafeteria. In addition to the nurse, there was a licensed clinical nurse that was sent by the health department that was on staff full time, as well as a number of backup responders at the school. The ALJ's decision had enough evidentiary support and it was grounded on correct law. Based on Doyle, the District Court properly affirmed the decision by the ALJ and granted summary judgment to the defendants and the school system. But where did the District Court consider or explain any ruling as to the ADA or the Section 504 claims? In the first sentence of the District Court's opinion, it grants summary judgment to the defendants. As this Court has said through the years, in terms of its cases, so long as the record below has enough information to support the District Court's opinion, the Court of Appeals can affirm the District Court's decision. In this case, you had the evidentiary record from the administrative law judge in the hearing below, as well as in summary judgment and the defendants have put forth a number of exhibits to address the issues that were being raised in the 504 and ADA claims that the appellants were raising. In terms of an overview of the different claims, you have an overview. The first claim was a reasonable accommodation claim. That reasonable accommodation claim that we've addressed in our brief to you was basically based on the same identical facts. As Your Honor has stated, it is exactly the same claims under both the IDEA appeal form, as well as the Section 504 appeal. And so when they're identical, the line of cases, the majority of circuits are addressing it the exact same way. You have courts within our circuit, the two cases that we referenced from the District Court of Maryland, as well as the District Court in Virginia that dealt with the same issue. In terms of the IDEA claim fails, the Section 504 claim fails. You also have the 6th, 8th, 10th, and 11th circuits who've also followed this line of reasoning. And we also submit a 5th circuit case that's following the same analysis as the 6th, 8th, and 10th circuits, which is a Pace case, which is a Pace v. Bogalusa from 2003, where the court- They're just splitting the circuits on that though, isn't there? Well, if you have the circuits that have ruled on it are the 6th, 8th, 10th, 11th, and 5th. In terms of our current circuit, and the 5th circuit had interesting language. They approached it from an issue preclusion and a claim preclusion analysis, that the issues had been litigated already and it would be proper for a district court to dismiss the claim. And so the issue in terms of this case had already been litigated in the IDEA administrative hearing. The district court properly dismissed the claim in terms of summary judgment because the issues were identical. In terms of the 9th circuit line of cases that appellants have been raising in this, they can be distinguished and in some ways their rulings favor the school system. The first case that they've cited in their brief is the Payne case. The Payne case was an exhaustion of IDEA administrative procedures. That was what the gist of the case was about. And what the 9th circuit said in Payne was you look at the prayer for relief. And if you look at the prayer for relief, if it can be addressed under IDEA, you should be addressing it under IDEA. In this situation, the prayer for relief under both the 504 appeal as well as the IDEA appeal were identical. They were identical, the exact same language. So even using the Payne and 9th circuit standard, you approach that case under the IDEA parameters. The other case that's being used by the appellants is the Tustin case that Amicus just raised. But Tustin was a very unique case because it was a very narrowly focused case. It was dealing with a provision in the ADA dealing with effective communication for deaf and hard of hearing students. It was basically talking about that there was a provision in the ADA that's more stringent for that particular effective communication subset and that it was approaching it from that point of view. That's not the case that we have before you. But the language in Tustin, especially, and I have the cipher at 1101, it's critical because it actually agrees with the 5th circuit and the 8th circuit dealing with this issue preclusion and claim preclusion analysis. So basically, the argument that the 9th circuit is veering away from these other circuits is really if you look at the Tustin language, in some senses it is actually agreeing because it's allowing district courts to use issue preclusion and claim preclusion as a means of dismissing the case if the issue has already been addressed. The appellants, if I understand their argument correctly, contend that there's a procedural defect in the Section 504 judgment in that they did not receive a hearing or an offer of a hearing until after they had already filed their claim in the district court. What's your response to their argument? Well, first of all, since the beginning of this process, the school system's procedures were, the revision of the procedures were started in January of 2012. They were finalized and put on the school system's website in June of 2013. The first appeal that was even filed by the appellant was not until September 10th of 2013. So all the revisions were done beforehand. Appeal from where to where? I couldn't hear you, I'm sorry. The appeal that you're mentioning, that's of what and where was it? September, the September 10th, 2013 appeal that was initially filed was the IDEA appeal that went through the administrative hearing process. And that, I know, but just logistically, what decision was being appealed and who was going to hear it? Once again, it was the exact same thing, the denial of the aid that was trained in. But who were the parties? Who was going to adjudicate this appeal? Was this administratively? It was, it would have been an administrative, it would have been an impartial hearing officer. The school system had revised its procedures to assign the cases to impartial hearing officers. And the appellants were repeatedly told, and as we noted in our briefs to you, were repeatedly told that this is being handled by the IHO, you have to go through these Section 504 procedures. The appellants refused over and over to comply with those procedures. And then when those procedures, when the first stage would be administrative review, then you go through the process. And so when they went through the, finally went through the process, the hearing was offered by the impartial hearing officer. The impartial hearing officer was trying to schedule the hearing, hold a pre-hearing conference, but the appellants refused to participate. So the hearing was offered, which is a remaining issue in the appellant's case, in terms of did they even get a hearing? It was offered. It was refused by the appellants. So when they argue discrimination, once again, we come back to the seller standard. You have to show that the student was discriminated solely on the basis of disability, and the school system acted with gross misjudgment or bad faith. In terms of this, the school system was over and over, if you look at the language of the They told the appellant, these are our procedures, here are a copy of the procedures, please tell us what your intention is, we would like to schedule the next stage of the process. They refused to participate in that, and the delays that took place in this case, in terms of the 504 hearing, were attributed to their refusal to participate, even when the hearing was even offered. In terms of the other discrimination claims that they're raising, in terms of when the were developed and put in effect way before the appeal was even filed. It was done by a different division of the school system, which was not even a division, the special education division that handled IDEA matters, which is what the student came under, because he was an IEP student, he was not a 504 student at that time. So all these procedures were developed, and there was no retaliation. They were developed before any filing had even taken place, and before the student was even on Section 504's radar. So when you look at, globally, in terms of the issues that were being raised by the appellants, they're trying to frame their appeal in IDEA, now under the heading of discrimination, arguing that the student was discriminated by means of not providing him the aid that was trained, and somehow that excluded him. Well, the student accessed education, as the ALJ's decision says, repeatedly. The student went to school, he accessed the educational program, he progressed in the curriculum, and he made progress. There was no denial, and no, as Judge Hudson was asking, there was no exclusion of the student. He attended school, he made progress. It was been noted in the ALJ's decision, and it was also, as we gave in terms of a citation to you in our brief, at JA-404A, there was testimony from the student's parent that the student liked school, he was eager to go each day, he looked forward to it, which is 404A. So in terms of, was the student provided access to the school? Yes, he was. So if you look at the overall claims that are being raised by the appellant, first, reasonable accommodation, that is identical to the IDEA claim. If it's a reasonable accommodation, it was already addressed under the IDEA parameters. Is there any other child in the Anne Arundel County School System who receives the level of personal accommodation they're requesting in this case? In terms of, Your Honor, I personally right now do not know if there are any particular children right now who are getting an aid assigned specifically to the child that is trained in CPR. And have a complex maneuver as well as CPR training? There are people, from my knowledge, there are people, just like we had at Rippling Woods Elementary School, more than a few people in every school that are trained as responders, backup responders, and typically the first line of defense in terms of that situation is the nursing staff. Are they a one-on-one aid, as they have in this case? I don't know about all the different cases that we, all the other students we have in the system. Tell us what the record shows here, because that would be what is important here, because the burden would have been on the appellants to produce that evidence. Well, the record, in terms of the information before the district court, the information before the district court, I want to make sure I understand your question. In terms of the accommodation and access, the record before the administrative law judge covered those issues. In terms of the, what- Well, directly, is there any other student reflected in the record that would meet the criteria that Judge Hudson asked about? The hearing record would be individualized to that particular student's case. We don't reveal information about other students because we're bound by privacy restrictions under FERPA. And so, we cannot reveal that other information, what is being provided, whether it be an IEP or a 504 or any type of services to protect the rights of the other students. And so, we don't reveal that, and we don't, that would not be in the record below because, for confidentiality for the other students. But coming back to- How would the plaintiff go about proving their case? I mean, if they say that there's a discriminatory action here, aren't they going to have to show that? Well, the discrimination piece is, are they being excluded, point one. They have not been excluded. Are they being treated differently than non-disabled students? No. They have not been treated differently. Non-disabled students are not- Wouldn't, wouldn't, I mean, I never tried one of these cases, but it would seem like to me that an essential element of proof would be that there would have to be some comparator shown in order to prove discrimination. Well the issue- That's what I'm asking about. Is there any evidence in the record that there's some comparator out there? Well, the evidence in the record pertained, individualized to the student what the student's needs were. Even in terms of the discrimination, it's driven in terms of the briefs that were presented as to whether the reasonable accommodation was needed for the child to access. And if he did not receive it, would he be excluded? Whether another child with a disability had it or did not have it is not relevant to this particular child and whether this particular child's individual health needs could be addressed by the response measures that were in place and were those response measures reasonable. That is the standard, even under Section 504, that needs to be addressed under the FAPE standard as well as the discrimination standard. Was the child excluded? The child was not excluded. The child attended school. Now in terms of the record below, the record has the exhibits from the summary judgment motion. It has the administrative record. So when you talk about the reasonable accommodation, access was addressed by the record below as well as whether there was a 504 hearing, it's in the exhibits to the summary judgment motion provided by the defendants at the district court level. The retaliation issue was addressed in summary judgment as well and exhibits were provided to the district court. So the record is ample and even though the district court did a statement of granting summary judgment, the record below supports the district court's decision with respect. As the court has noted in U.S. v. McCann, the court may affirm the district court's decision on any ground appearing in the record, including theories not relied upon by the district court, as the follows with the Melvin case, et cetera. And so our position is the delays in this case, if there were any, in terms of the 504 court process were attributed to the appellant's refusal to participate and comply with the section 504 procedures, which were different from the IDEA hearing procedures, point one. The reasonable accommodation that was, that they are asking for under section 504 is basically asking for a second bite at the apple because those issues were litigated fully at the administrative level. They were decided. The due weight under the Doyle case should be afforded to the administrative law judge's decision and the district court properly did so. The credibility determinations of the ALJ were properly afforded deference under the Doyle standard by the district court. When the IDEA claim failed under FAPE, the section 504 claim failed. Now amicus is arguing that the language in 34 CFR 104.33B in terms of should be disregarded. That's the plain language and that provision and for section 504 it says that if you have an IEP that is appropriate, an educational program that is appropriate under the IDEA, that is one means of meeting the standard established under section 504 for appropriateness. So the school system has already addressed and met that standard in terms of the IDEA decision and because the claims are identical, the section 504 claim would also fail. And if the support from all the variety of circuits that we've noted as well as courts within this circuit and the theory under this, if you look at the language and sellers and all the different cases dealing with IDEA rendered by this court, whether it be TICE or AB or MM, all these cases talk about access. Access to the educational environment for a child with a disability that historically had been removed. This child had the access and so the attempt here by appellants and amicus to distinguish somehow the standard under 504 and the standard under IDEA to be different is belied by the fact that the cases from the Fourth Circuit all talk about access. They all talk about comparability in terms of treating these children, making sure that basic floor of opportunity is provided so they can enter that school building and work on the general curriculum just like a non-disabled child would. And so by trying to see they can change the interpretation of the 34 CFR language to change it somehow to make it mean something different is not what the line of cases that we've given to you are stressing. So in terms of the overall claims that the appellants are trying to raise here, most of those claims, a record is complete and comprehensive enough to give to the Court of Appeals the information to affirm the district court opinion. It is in the administrative record. It is in the exhibits to the summary judgment motion. Summary judgment is an appropriate vehicle to address a 504 issue and it was addressed and it was briefed fully by the parties at the district court level. And the remedies that are in place have already been attributed. Basically what's happening here is the claims under 504 and ADA are as the Ninth Circuit said in Tustin, this is a second shot at trying to re-litigate this case when issue preclusion and claim preclusion should control here and the ruling under the IDEA administrative case should apply to the 504 case. There was no denial of a hearing under 504. There was no retaliation. All of the issues have been addressed in terms of the complete record that's before you and that's below and so accordingly the school system asks that the judgment below be affirmed. I know I have some time remaining. I hope I've answered all of your questions. Thank you very much. Ms. Altabella, you have a few minutes left in rebuttal. Thank you, Judge. The question that Judge Hudson asked is exactly one of those questions that we hoped to get the answer from in a trial on the retaliation. I know that it is not in the record but that is something that we were hoping that we could get that information through a Freedom of Information Act that the family was embarked on during the time prior to after we got dismissed by the district court. Rebutting the representations by counsel on the circuit split, the KM versus Tustin very clear, that is what KM versus Tustin says out of the Ninth Circuit. The Sixth Circuit, there is the Frye case versus Napoleon Community School District which is a case about a service dog and the Sixth Circuit was very clear that the claims could proceed on the ADA claims because those remedies that they were seeking were not necessarily under the IDEA. In the First Circuit, the Neves-Marquez versus Puerto Rico at 353 F. 3rd, 108, the First Circuit in 2003 again says that there are distinct claims. The retaliation that we alleged had to do with Defendant DeWitt blocking the training of the aid that came out and is in the administrative record. The ALJ clearly said that the county could have chosen to train the aid, they just didn't. It is clear what is in the record through the testimony as well as in . . . Is that the graph of one of your retaliation claims that you didn't get the relief to train the aid? Well, it was the imposition of Defendant DeWitt inserting herself with the decision to train the aid that was made by Nurse Petschauer. The other retaliation claims that we have have to do with our failure to get a hearing from the Anne Arundel County Public Schools once we filed on September 10, 2013. That is your 504 hearing? Our 504 hearing, yes, that we never received. Their procedures . . . All right. So I am clear here. Your claims of retaliation are two-fold. One, you didn't get the 504 hearing, and the other is that the school system didn't train the aid in the way that you had requested both for the IDEA and the ADA cases. That Defendant DeWitt intervened when the Nurse Petschauer said that the aid, Ms. Costa, would be trained. And there was an email that was sent that came out in our administrative hearing that once the decision was made to train the aid by the Department of Health, that Ms. Petschauer intervened with an email and said, no, that was not going to happen because it would set a precedent and the aid had too much on her plate already. That came out in the testimony at the administrative law hearing, and we believe that was all part of our retaliation claims. We were looking for a reasonable accommodation. Once we got to district court, we believe that that intervention by central office staff was very clearly retaliation, coupled with the fact that we never got our 504 hearing, even if you set aside the September 10th, 2013 date and believe that on October 23rd, when the ALJ O'Connor dismissed our 504 claims, that they knew that we were asking for a 504 hearing because they had our September 10th filing. What is pretty clear in the record as well is that that ADA hearing, I mean the 504 hearing request that was forwarded on to the impartial hearing officer was not our original request. Thank you. Thank you very much. I appreciate the argument of counsel. We'll come down and greet counsel and then move on to our other case for this afternoon.
judges: G. Steven Agee, Stephanie D. Thacker, Henry E. Hudson